IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF INDIANA

| | |
|---|---|
| RICHARD KERLEY<br>    *Plaintiff,*<br>vs.<br><br>BRADLEY ROBERT SERVIES, in his individual and official capacities, ISRAEL Z. SALAZAR, in his individual and official capacities, and CITY OF LAFAYETTE, a municipality within the County of Tippecanoe, Indiana,<br><br>    *Defendants,* | Case No.: 4:23-cv-22<br><br>Plaintiffs Original Complaint<br><br>EXHIBITS 1-2 attached hereto and incorporated herein<br><br>Jury Trial Demanded Herein<br><br>-FILED-<br>MAR 6 2023<br>Chanda J. Berta, Acting Clerk<br>U.S. DISTRICT COURT<br>NORTHERN DISTRICT OF INDIANA |

## PLAINTIFFS' ORIGINAL COMPLAINT

TO THE HONORABLE JUDGE OF SAID COURT:

**COMES NOW**, Plaintiff, Richard KERLEY, in the above-titled cause, hereby file this, his Original Complaint for Civil Rights Violations under U.S.C. 42 §1983 for deprivation of certain of his guaranteed and protected civil rights relating to the 1st, 4th, and 14th Amendment violations, including *Monell* claims.

### I.     INTRODUCTION AND OPENING STATEMENT

1.    This is an action brought by Plaintiff, Richard KERLEY, against defendant officers, who were all acting under the color of law while employed as agents of the state by the entities for which they were employed, the City of Lafayette, Indiana.

2.    On 3/4/21, Plaintiff and a friend, Bryan Wilkins, both first amendment auditors, who observe, video record police encounters and occasionally post the videos online, were observed driving through a parking lot of a local motel.

Plaintiff Richard KERLEY's Original Complaint                                                                 Page  1

KERLEY and his friend were followed by certain of the Defendants for over 30 minutes.

3. Unable to observe Plaintiff committing any traffic violation during this time, defendant Officer Servies decided to fabricate a reason for a traffic stop and contended that Plaintiff had failed to activate his turn signal for a turn. He then made a felony traffic stop. This stop was motivated by KERLEY's First Amendment protected activities of observing and video recording officers in their official capacities.

4. Approximately 12 police officers arrived on scene and, absent any probable cause, held Plaintiff and Wilkins at gun point. The two were ordered to exit from KERLEY's car, were handcuffed, and absent consent, outside of any arrest and absent probable cause were searched beyond Terry Stop constraints, then held captive in isolation within the caged area of police vehicles. Further, through the fishing expedition by the police, no evidence of any crime was acquired.

5. After harassing, terrorizing, threatening, searching and imprisoning both men, and seizing KERLEY's and Wilkins' phone cameras and identifications, SERVIES, SALAZAR and other officers searched their identifications by running them for outstanding warrants and any information. After determining that there was nothing they could charge KERLEY or Wilkins with, DEFENDANTS released them.

6. These defendant officers were aware of KERLEY's identity, stalked both he and Wilkins for the sole purpose of harassing them and causing them extreme emotional distress. In addition, when KERLEY made public record requests for all related records to this encounter, certain Defendants and/or their confederates, in order to create an unreasonable obstacle for KERLEY to secure the records, charged KERLEY approximately $2,440 for these records.

This is well above the $150 maximum authorized by the State Attorney General. Defendants' actions thereby were violative of Plaintiff's 1st, 4th, and 14th Amendment rights.

7. The City of LAFAYETTE, because of their failure to supervise and train their employee officers, resulted in conduct by these other defendants that violated Plaintiff's clearly established rights relating to the 1st, 4th, and 14th Amendments to the Constitution.

## II. JURISDICTION AND VENUE

8. Causes of Action of this complaint arise under 42 U.S.C. §1983 (Civil Action for Deprivation of Rights). The jurisdiction of this court is founded on federal question jurisdiction, 28 U.S.C. §1331 and this court also has original jurisdiction pursuant to 28 U.S.C. §1343.

9. Venue is proper because all events giving rise to Plaintiffs' causes of action occurred within this district, as provided in 28 U.S.C. § 1391(b)(2).

## III. PARTIES

### A. Plaintiff

10. Plaintiff Richard KERLEY, hereinafter "KERLEY", at all times relevant herein, suffered injury while in this District in the City of Lafayette, Indiana.

### B. Defendants

11. Plaintiff is informed and believes that Defendant, BRADLEY ROBERT SERVIES, hereinafter "SERVIES", was a peace officer, badge #457, for the City of Lafayette, Indiana, and employed by defendant City of Lafayette, and at all times relevant to this complaint, was acting as an employed, compensated, enriched and rewarded employee for City of Lafayette. SERVIES is being sued in his individual and official capacities.

12. Plaintiff is informed and believes that Defendant, Israel Z. Salazar, hereinafter "SALAZAR", was a peace officer, badge #417, for the City of Lafayette, Indiana, and employed by defendant City of Lafayette, and at all times relevant to this complaint, was acting as an employed, compensated, enriched and rewarded employee for City of Lafayette. SALAZAR is being sued in his individual and official capacities.

13. Plaintiff is informed and believes that Defendant City of Lafayette, Indiana, hereinafter "LAFAYETTE", is an incorporated political subdivision within the State of Indiana, and can be sued as such person specific to this lawsuit.

## IV.   GENERAL FACTUAL ALLEGATIONS

14. Plaintiff, as was his passenger for the following encounter, are known videographers, vloggers, and civil rights activists who have been video recording and publishing these edited and unedited recordings on media forums such as, YouTube, Facebook, Instagram, and the like since approximately 2020. KERLEY and his passenger are each individually labeled as a "cop watcher"[1] by the local police.

15. On Thursday, March 4, 2021, at approximately 9:30 p.m., KERLEY and an acquaintance, Bryan Wilkins, known by police and others to be a "cop watcher", were driving his gray Honda CR-V in Lafayette, Indiana, looking for

---

[1] **Copwatcher** (also **Cop Watcher**) has been determined to be a general label for any person who regularly monitors by observation, video recording, or otherwise, police activity in public places. These Cop Watchers believe that monitoring police activity while in the performance of their official duties in public places in this manner is a way to aid in holding the peace officers accountable to their oath of office and laws. Further, they believe this monitoring aids in preventing police brutality and violations of individual citizens civil liberties by the police. The stated goal of at least one Copwatch group is to engage in monitoring and videotaping police activity in the interest of holding the police accountable in the events involving assaults or police misconduct. -*Wikipedia*

police officers engaged in traffic or other stops. They had a police scanner active in the car and their video cameras at the ready.

16. After KERLEY and Wilkins had been driving a short while, they routed their trip through another area of Lafayette, Indiana. KERLEY turned into the Motel 6 parking lot located at 139 Frontage Road, Lafayette, Indiana, drove into the parking lot and then reentered the street. Sometime prior to KERLEY going through this parking lot, the Lafayette Police Department had designated this area a high crime area, including drug trafficking.

17. At the time of this event, a Lafayette Police Department officer, Lieutenant Wainscott, #L12, was parked in the parking lot of the Motel 6 in an unmarked police vehicle. Wainscott was making reports to other officers about any car "that made suspicious visits to the area". Wainscot observed KERLEY drive through the parking lot and reported this as a suspicious vehicle.

18. Within moments, SERVIES who was detailed with assisting in this operation received the description of KERLEY's car and began to follow him. SERVIES immediately called in the license plate of KERLEY's vehicle and was informed that it was "clear". Despite this notice, SERVIES continued to follow KERLEY for almost 30 minutes. KERLEY noticed that SERVIES was following him and was highly conscientious about obeying any and all traffic laws. SERVIES reported that KERLEY was observing all traffic laws.

19. KERLEY, noticing that he was being followed, drove into a convenience store parking lot to see if SERVIES would approach and speak with him. SERVIES instead drove past KERLEY until he was no longer within view of KERLEY. KERLEY continued driving and then re-entered the street when he observed SERVIES reappear behind him and continue to follow him. During the next, approximately, 25 minutes, KERLEY exited the roadway and pulled

over several more times in different locations, in order to determine if SERVIES would drive over to him and make contact with him.

20. SERVIES, each time, instead of making contact with KERLEY drove past KERLEY and disappeared, and in the same pattern of conduct, reappear behind KERLEY when he returned to drive back on the surface streets. On at least one occasion during this 30 plus minute stalking by SERVIES, he did drive alongside KERLEY's vehicle and stare at he and Wilkins.

21. SERVIES concluded and reported that he believed KERLEY was "suspicious" because KERLEY was operating his vehicle well within compliance of all of the traffic laws, driving without purpose, and was taking every possible step to avoid police interaction.

22. After KERLEY turned westbound onto Main Street, despite KERLEY signaling and then making this turn, SERVIES, who observed no traffic violation by KERLEY, chose to make a felony stop of KERLEY. KERLEY responded to the emergency lights of the police cruiser by pulling over and stopping his vehicle.

23. Defendant SALAZAR then appeared on scene and he and SERVIES walked up to KERLEY's car, one on each side of the vehicle with their sidearms drawn and aimed at KERLEY and Wilkins. Within moments, 10 other officers appeared on scene, and approached KERLEY and Wilkins who were seated in the car. At least 2 of these officers had their weapons drawn and aimed at plaintiff and his passenger.

24. KERLEY observed the officers in his sideview mirrors with their weapons drawn because they had not come near the driver side window. KERLEY kept his hands in plain view on the steering wheel as he heard one officer state that he would cover for another officer if he shot KERLEY or Wilkins. KERLEY and Wilkins were in fear for their lives.

25. At gun point, the two were ordered to exit from KERLEY's car, were handcuffed, searched beyond Terry Stop constraints and absent consent, probable cause, and outside of any arrest. Additionally, the officers present peered into KERLEY's car for evidence of crime.

26. As the officers conversed with Plaintiff, they stated to him that they pulled him over because his car did not signal a turn, 200 ft, and that they had reason to believe that he was trafficking drugs. They stated that this was because he drove through the Motel 6 parking lot.

27. At the conclusion of this search, noting that the officers stating that they had no reasonable suspicion of any crime having been committed, just driving through the MOTEL 6 parking lot, Plaintiff and Wilkins were unhandcuffed and released without citation. The officers stated that they were clear of any warrants or other legal process or circumstances that would lead to an arrest. Despite supervising officers being on scene, they did nothing to intervene nor did they do anything to prevent the harassing conduct of the officers.

28. After this encounter, KERLEY contacted the local police and made public information requests for all reports and eligible public information relating to this encounter.

29. KERLEY made payment for any records requested requiring a fee, but was surprised to learn that the CITY of LAFAYETTE Police Department stated that if he wanted the body camera and/or dash camera video footage from the incident that he would have to pay $2440.00. Despite the Indiana State Attorney noting that the maximum charge that could be made for such records be a maximum of $150.00, KERLEY tendered $2,440.00 payment for these records, *see Exhibit 4*, and has not received any refund for the balance.

30. Since this incident occurred, KERLEY has been suffering from anxiety when he sees any of the local Police Officers in his proximity. Plaintiff holds

strong concern that if he is to be seen by the local police while he is driving in a low traffic area and/or at night that they intend to cause him great distress, harm, and even death.

31. These defendants despite having advance knowledge that there were no warrants for Plaintiff's arrest, that his car was not reported or otherwise alleged to have been stolen, that he has not ever been charged with any drug activity, and that Plaintiff had not committed any traffic infraction, made a pretextual felony traffic stop in which they accused him of being involved in drug trafficking.

## V. CAUSES OF ACTION

### CAUSE 1
### (42 U.S.C. § 1983; Violation of 4th Amendment)

32. Plaintiff repeats and re-alleges the allegations contained in paragraphs 1 through 31 above and incorporates the same as if set forth in full.

33. Defendants SERVIES and SALAZAR knew or should have known that driving safely so as to avoid police contact is not a crime. Further, these defendants knew that making a pretextual stop just to make a seizure and search of a person and/or his property absent probable cause and doing so by use of force when no threat is present is a violation of the 4th Amendment.

34. As a direct and proximate consequence of the acts of these defendants, KERLEY has suffered a violation of his 4th Amendment right and injury therefrom and is entitled to recover damages accordingly.

///

///

///

## CAUSE 2

### (42 U.S.C. § 1983; Violation of 1st Amendment)

35. Plaintiff repeats and re-alleges the allegations contained in paragraphs 1 through 34 above and incorporates the same as if set forth in full.

36. Defendants knew or should have known that filming the police and other public servants in performance of their duties, especially when in public is constitutionally protected. To retaliate against Plaintiff for doing so by making the unlawful stop, making an unnecessary show of force, and search and seizure of him, is a violation of his protected First Amendment right.

37. As a direct and proximate consequence of the acts of these Defendants, KERLEY has suffered a violation of his 1st Amendment right and injury therefrom and is entitled to recover damages accordingly.

## CAUSE 3

### (42 U.S.C. § 1983; 14th Amendment Violation- Due Process)

38. Plaintiff repeats and re-alleges the allegations contained in paragraphs 1 through 37 above and incorporates the same as if set forth in full.

39. The City of Lafayette Police Department knew or should have known that the State of Indiana has a cap on a public records request fee of $150.00, yet they took months to provide the requested body camera footage and charged KERLEY almost 15 times this amount, $2,440.00.

40. The CITY OF LAFAYETTE through its Police Department by doing so violated KERLEY's rights relating to the 14th Amendment.

41. As a direct and proximate consequence of the acts of these Defendants, KERLEY has suffered injury therefrom and is entitled to recover damages accordingly.

## CAUSE 4

### (42 U.S.C. Sec. 1983 - *Monell* claim against Defendant City of Lafayette - Failure to properly train and supervise –

42. Plaintiff repeats and re-alleges the allegations contained in paragraphs 1 through 41 above and incorporate the same as if set forth in full.

43. Defendant CITY OF LAFAYETTE, through its supervisors, officers, employees and training demonstrated that they have a practice of detaining people, searching and seizing persons and their property absent probable cause or warrant for improper reasons, specifically to deter First Amendment protected activities.

44. Defendant CITY OF LAFEYETTE knew or should have known that their training and supervision of their officers must include clear knowledge of the constitutional nuances of consensual encounters, investigatory stops, arrests, and searching persons and property absent any warrant. Further, they should properly train and supervise their employees instead of ratifying their employees illegal and unconstitutional conduct.

## VI. PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff prays that this honorable court find that each and every defendant has violated his rights as described.

Plaintiff prays for relief against Defendants, jointly and severally, as follows:

a. Enter judgment against each and every defendant individually named and find them jointly and severally liable;

    b. Find that the Plaintiff is the prevailing party in this case and award attorney's fees and costs, according to federal law, as noted against all defendants.

    c. Award actual and general damages against all named defendants jointly and severally in their respective individual capacities in the amount of $100,000.00;

    d. Award exemplary punitive damages against all named defendants jointly and severally in the amount of $1,000,000.00, so as prevent any similar type of deprivation of rights in the future against any other citizen similarly situated.

    e. And grant such other and further relief as appears reasonable and just, to which Plaintiff shows himself entitled.

The declaratory relief requested in this action is sought against each Defendant; against each Defendant's officers, employees, and agents; and against all persons acting in active concert or participation with any Defendant, or under any Defendant's supervision, direction, or control.

DEMAND FOR TRIAL BY JURY REQUESTED HEREIN

I, RICHARD KERLEY, DECLARE UNDER PENALTY OF PERJURY THAT THE FOREGOING IS TRUE AND CORRECT TO THE BEST OF MY KNOWLEDGE.

DATED this 4th day of March, 2023.

                                              Richard KERLEY
                                              13175 James Drive
                                              Saint John, IN  46373
                                              773-251-3769
                                              Email: Milehighmedic@protonmail.com
                                              In Proper Person

Exhibit 1

Thumb Drive of Body Camera Footage – attached hereto

Exhibit 2

Lafayette Police Department Production of Documents Receipt 8/23/2021
1 Page

Receipt from LPD Records



**LPD Records**

20 N 6th St.
Lafayette, IN 47901
765-807-1280
http://lafayettepolice.us

8/23/2021
11:14 AM

| | |
|---|---|
| (PDOC) Production of Documents 16 BODY CAM 1 911 AUDIO CASE REPORT | $2,440.00 |
| **Total** | **$2,440.00** |

Receipt HXmg
Authorization 03648G

Visa 4837